## CLARK *vs.* CLOUGH.

The receipt taken by a deputy sheriff, from the person to whom he delivers for safe keeping the goods by him attached, is a contract for his own private security, which the creditor has no right to direct or control.

But if the officer place such receipt in the hands of the creditor's attorney, to be prosecuted for his benefit ; this is an equitable assignment of the contract, for which his liability to the creditor forms a sufficient consideration.

THIS was an action of the case against the defendant, a deputy sheriff, for refusing to deliver up to the plaintiff an execution in his favor against one *Plummer*, upon tender of all his fees and expenses thereon ; and for not returning the same execution.

At the trial, which was before the *Chief Justice*, the following facts appeared in evidence.

In *May* 1816, *Pitt Dillingham*, having purchased land of one *Norris*, commenced a real action to recover the possession, in the name of *Norris*, against one *Howe*, who claimed it. The writ in that case was served by *Clark*, the present plaintiff, then a deputy sheriff, who attached personal property of *Howe*, which was delivered into the hands of *Plummer*, who receipted for it. Judgment was rendered in that suit in favor of the demandant, and a writ of possession was thereupon duly issued and delivered to *Clark*, within thirty days after judgment rendered. *Clark* forthwith placed *Plummer's* receipt in the hands of Mr. *Williams*, who was the demandant's attorney, with directions to put it in suit, and apply the proceeds to pay the costs recovered in the suit of *Norris* against *Howe*. The suit commenced on this receipt was conducted partly by Mr. *Williams* and partly by Mr. *Barnard*, through some litigation, to final judgment, which was rendered in this Court at *May* term 1823 ; *Clark*, however, having employed

and paid other counsel at one of the terms. The execution which issued on this judgment was the subject of the present suit. Soon after it was delivered to *Clough*, the defendant, for service, *Dillingham*, passing that way, claimed the execution, and was proceeding to give the defendant written orders to pay over the money when collected, and an indemnity for so doing ; when *Clark*, who was in the same vicinity, applied to the defendant for the same purpose. Afterward, on the same day, all the parties being together, *Clark* tendered to the defendant his fees, and demanded the execution, which *Dillingham* forbade him to deliver. The defendant chose to follow the directions of the latter, which he some days after received in writing, and accordingly collected and paid over to him a certain part of the execution, retaining the balance to pay the fees of the counsel concerned in the cause.

While the suit against *Plummer* was pending, in *April* 1822, a suit was commenced in the name of *Norris*, against *Clark*, for neglect of duty in not seizing and selling, under the execution against *Howe*, the property he had attached on the original writ; and judgment being rendered against him at *August* term 1822, he was taken in execution, and subsequently discharged on taking the poor debtor's oath.

The Chief Justice instructed the jury, that the receipt having been placed in the hands of *Dillingham's* attorney, to be collected for his use, he had a right to control the execution, on which the attornies also had each a lien for their fees and expenses;—and that the money received by *Dillingham*, on this execution, might well be considered as payment of the judgment against *Clark*; which being now satisfied, the liability of the present plaintiff on that account was terminated; and he therefore ought not now to be permitted to reclaim the money to his own use.

To this opinion, the jury having found for the defendant, the plaintiff filed exceptions.

*Stebbins*, for the plaintiff. It was erroneous to instruct the jury that *Dillingham's* receipt of the money on the execution of *Clark* against *Plummer*, was payment of the judgment against *Clark*. The causes of action were distinct and unconnected; the former

being in contract, the latter in tort. *Allen v. Holden* 9 *Mass.* 133. 2 *Greenl.* 345. It could be no payment, without the assent of the debtor, and such assent he has never given.

Nor was it correct to say that the receipt was under the control of *Dillingham*, or to be collected for his use, or that it was wrong for *Clark* to recover, and hold the money. If *Dillingham* had such authority, it must be either that he was party in interest when the receipt was taken, or that it subsequently became his by assignment. But it was not the former; for it was not taken by his direction or consent, but wholly for the protection of the officer, who was liable over to the creditor, and whose sole remedy was upon this contract of his servant or bailee of the goods attached. Nor was it assigned to him;—neither absolutely, for this would be a perfect extinguishment of his liability to the creditor, in the nature of a payment;—*Dole v. Hayden* 2 *Greenl.* 152,—nor conditionally, or by way of collateral security. Had this been so, the claim of the creditor would now have been merged in his judgment against *Clark*. It was in truth merely an expression of what *Clark* intended to do with the money when collected; but it was never given to nor accepted by *Dillingham*, in any sense whatever. The legal presumption is, that he was about to apply the money in discharge of his nearest liability. *Baker v. Cook* 11 *Mass.* 336.

Nor had the attornies any lien on that judgment, or execution. The lien of an attorney in this State is merely the common law right to retain his client's papers, till his fees and disbursements are paid. *Doug.* 226. *Davis v. Bowker* 5 *D. & E.* 488. *Esp. Dig.* 584. *Selw. N. P.* 1162, and it has been extended no farther. But even this lien is of no force till expressly claimed, and notice given. This notice is to go to the judgment *debtor*, to bind him. And if our statute on this subject is construed to continue the lien after the execution is delivered to the officer, the notice must go to him also. But without notice to all concerned, it is of no force. *People v. Hardenburg* 8 *Johns.* 353. *Martin v. Hacker* 15 *Johns.* 405. But here was no such notice given by either of the attornies; and therefore their lien, if it ever existed, was gone.

*Allen,* for the defendant.　The plaintiff had in truth no interest in the execution against *Plummer.*　The taking of the receipt was an official act, and it was put in suit for the benefit of whom it might concern.　No assignment was necessary to transfer it to *Dillingham;* it was enough if it was delivered to his attorney, to be appropriated to his use, and with his assent.　The officer being merely a trustee of the security, no consideration was necessary to give validity to the transfer.　And it was an interest which ought to be protected.　*Dunn v. Snell* 15 *Mass.* 485. *Jones v. Witter* 13 *Mass.* 304.　The real plaintiff, through the whole, was *Dillingham;* who has been the sole party beneficially interested in every remedy which has been sought in the case. *Dunlap v. Locke* 13 *Mass.* 525.

The case stands, in effect, as if *Clough* had collected the money and paid it over to *Dillingham,* against whom this action was brought to recover it back.　Clearly that would be the case of a payment by a debtor to his creditor, and as such might be pleaded by *Clark,* in bar to an action of debt on the judgment against him.

Besides, the verdict has done substantial justice between the parties;—and in such case the Court will not disturb it, where the consequence would be only the recovery of nominal damages; —even though the instructions to the jury were erroneous in point of law.　*Gerrish v. Bearce* 11 *Mass.* 193.　*Cogswell v. Brown* 1 *Mass.* 237.

Weston J. at the following *June* term in *Kennebec,* delivered the opinion of the Court as follows.

The plaintiff in this action, having, in his capacity of deputy sheriff, attached property to respond the judgment which might be recovered by *Pitt Dillingham,* prosecuting in the name of *Josiah Norris* against *John Howe,* became answerable to *Dillingham* to the amount for which he might obtain judgment; not exceeding however the value of the property attached.　The instrument given to the plaintiff by *Plummer,* to whom he delivered the property, was taken for his own security, that he might be enabled to discharge the responsibility he had assumed in his official capac-

ity. It was a contract therefore belonging to the plaintiff, which the attaching creditor had no right to direct or control. His remedy was against the plaintiff, or against the sheriff, who was by law answerable for his official acts; and this remedy was effectual and adequate. But it was competent for the plaintiff to place the receipt given by *Plummer* under the direction of *Dillingham,* and it appears that he did in fact put it into the hands of his attorney, that it might be prosecuted for his benefit, in order that he might thus realize the fruits of his judgment against *Howe.* The liability the plaintiff was under to *Dillingham,* and the obligation imposed upon the latter, from the nature of the transaction, to account for the proceeds in discharge of that liability, formed a sufficient consideration for this arrangement. *Dillingham* thereupon became the assignee of the contract, as collateral security for his claim against the plaintiff; or he was clothed with a power in relation to it, so coupled with an interest, arising from this consideration, as well as from his expenditures and disbursements in the prosecution of the suit against *Plummer,* as to be no longer revocable at the will of the plaintiff. No formal instrument executed between the parties, either under seal or otherwise, was necessary to give to the transaction a legal and binding efficacy. These equitable interests, when supported by a sufficient consideration, are recognized and protected by the law and enforced, according to the dictates of good faith and moral obligation.

The cases of *Dunn v. Snell* 15 *Mass.* 481, and of *Vose v. Handy* 2 *Greenl.* 322, exhibit the full developement of this principle, relieved from all technical formalities, and must be considered as settling the law upon this subject.

It was not competent therefore for the plaintiff to interfere with the execution, which *Dillingham* had finally, and at great expense obtained against *Plummer;* and the defendant was well justified in obeying the directions of *Dillingham,* and in disregarding those of the plaintiff. There was no undertaking, on the part of *Dillingham* or his attorney, to abstain from the prosecution of a suit against the plaintiff; although it appears that he did forbear such prosecution for a period of nearly four years, while the suit against *Plummer* was still pending, and until possibly, from the length of time in which it had been controverted, it might be con-

sidered doubtful whether it would be brought to a successful termination. *Dillingham* did not otherwise obtain satisfaction of his judgment against the plaintiff, but the avails of the suit against *Plummer*, having been received after judgment, and having been expressly appropriated to discharge the liability upon which it was founded, may and ought to be considered as received in payment and discharge of that judgment.

The exceptions in this case are overruled; and there must be judgment on the verdict.