DAMIÁN CANALES MELECIO, demandante y apelado, *v.* ALFREDO CHÉVERE MARTÍNEZ, CARIBBEAN DAIRY, INC. y COMMERCIAL INSURANCE COMPANY, demandados y apelantes.

Número 11004.

*Sometido:* 1 de febrero de 1954. *Resuelto:* 16 de febrero de 1954.

*Bolívar Pagán,* abogado de los apelantes; *María Valentín Collazo* y *Francisco Colón Gordiany,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

En la mañana del día 4 de agosto de 1951 y en la Avenida Quisqueya, frente al Hipódromo Las Monjas de Hato Rey, Puerto Rico, un automóvil marca Ford, tipo camión, arrolló a Damián Canales Melecio, ocasionándole contusiones en distintas partes de su cuerpo, entre ellas, una en el tobillo del pie izquierdo con fractura en el segundo, tercero, cuarto y quinto metatarso y en la falange proximal del quinto dedo del pie izquierdo.

Instó Canales Melecio demanda ante el anterior Tribunal de Distrito, Sección de San Juan, contra Alfredo Chévere Mar-

tínez, como chófer del vehículo, contra la Caribbean Dairy, Inc. como dueña de dicho vehículo y contra la Commercial Insurance Company.(¹)

---

(¹) En vista de los errores señalados por los apelantes se hace necesario copiar a continuación todas las alegaciones de la demanda. Éstas son como sigue:

"1. Que el demandante en este caso es mayor de edad, y vecino de Río Piedras, Puerto Rico.

"2. Que el demandado Alfredo Chévere Martínez es mayor de edad, de estado casado y es vecino de Toa Alta, Puerto Rico.

"3. Que la Caribbean Dairy, Inc. es una corporación con planta y oficinas en la calle Santa Ana núm. 1, de Santurce, Puerto Rico y dirigida por su dueño, don Ramón Rosado.

"4. Que la codemandada, Commercial Insurance Company, es una compañía aseguradora representada en Puerto Rico por sus agentes Insular Underwriters Corporation, con oficinas en San Juan, Puerto Rico.

"5. Que el día 4 de agosto de 1951 el automóvil marca Ford, tipo Camión, tablilla No. H-80572, era y continúa siendo propiedad de la Caribbean Dairy, Inc. de Santurce, Puerto Rico.

"6. Que en 4 de agosto de 1951, como a las 6:30 A. M. en la Avenida Quisqueya, frente al Hipódromo Las Monjas, de Hato Rey, Puerto Rico, el anteriormente descrito automóvil marca Ford, guiado allí y entonces por su chófer Alfredo Chévere Martínez, arrolló al demandante señor Damián Canales Melecio, ocasionándole contusiones en la espalda, en el brazo derecho, golpe en el tobillo izquierdo con fractura en el segundo, tercero, cuarto y quinto metatarso y en la falange proximal del quinto dedo del pie izquierdo, así como otras lesiones en el cuerpo, por las cuales fué llevado al Hospital Municipal de Santurce, Puerto Rico, para hospitalización y para tratamiento médico.

"7. Que el dicho accidente ocurrió por la negligencia temeraria, descuido, imprudencia e inexperiencia del conductor del vehículo, señor Alfredo Chévere Martínez, consistiendo dicha negligencia temeraria, descuido, imprudencia e inexperiencia en que el vehículo aludido iba a una velocidad no común en sitio como por el que caminaba que era una carretera urbana, sin tocar claxon ni aparato de alarma; no tomó las debidas precauciones.

"8. Que con motivo de dichos golpes y contusiones, a consecuencia de dicho accidente, el demandante Damián Canales Melecio, tuvo que ser hospitalizado y atendido en el Hospital Municipal de Santurce, habiendo padecido de grandes dolores físicos, sufrimientos morales, dolores y sufrimientos estos de los que no está todavía recuperado y de los que podría tener más tarde fatales consecuencias.

"9. Que con motivo de dicho accidente el demandante ha sufrido daños y perjuicios ascendentes a la suma de $2,069 por los conceptos siguientes.

| | |
|---|---|
| "Por asistencia médica | $20.00 |
| "Por medicinas | 29.00 |
| "Por gastos de Taxis y otros vehículos de pasaje | 20.00 |
| "Por dolores físicos y mentales | 2,000.00 |
| Total | $2,069.00" |

Contestaron los demandados negando las alegaciones esenciales de la demanda y levantaron ciertas defensas afirmativas.(²) Se celebró un juicio en los méritos y el tribunal a quo dictó sentencia condenando a los demandados a pagar solidariamente al demandante la suma de $1,530 más las costas y $150 para honorarios de abogado, luego de formular las siguientes conclusiones de hecho:

"1. El demandante es mayor de edad y vecino de Río Piedras, Puerto Rico; el codemandado Alfredo Chévere Martínez, es mayor de edad, chófer y vecino de Toa Alta, Puerto Rico; la codemandada Caribbean Dairy, Inc. es una razón social que opera bajo ese nombre con oficinas en la calle Santa Ana número 1 de Santurce, Puerto Rico; la codemandada Commercial Insurance Company es una compañía aseguradora representada por sus agentes Insular Underwriters Corporation con oficinas en San Juan, Puerto Rico.

"2. El día 4 de agosto de 1951 la codemandada Caribbean Dairy, Inc. era dueña del automóvil marca Ford V-8, modelo Truck F-7, licencia y tablillas H 80-572, el cual era conducido en dicho día, entre seis y siete de la mañana, por su empleado codemandado Alfredo Chévere Martínez.

"3. El día 4 de agosto de 1951, como a las 6:30 de la mañana, el demandante había salido de su casa e iba para su trabajo por la Avenida Quisqueya de Hato Rey, Puerto Rico, caminando a pie por la derecha de dicha vía pública.

"4. Dicho automóvil Ford V-8, modelo Truck F-7, licencia y tablillas H 80-572, propiedad de la codemandada Caribbean Dairy, Inc. y conducido en esos momentos por el codemandado Alfredo Chévere Martínez en el curso de sus funciones como empleado de dicha codemandada, transitaba a esa misma hora y a bastante velocidad por la expresada vía pública en la misma dirección que llevaba el demandante, sin tocar claxon ni aparato de alarma y sin tomar precauciones, y al acercarse a la sección

---

(²) Dichas defensas consisten en que (a) la demanda no aduce hechos constitutivos de una causa de acción; (b) el accidente fué uno desgraciado e inevitable, o el mismo fué causado exclusivamente por la culpa y negligencia del propio demandante; y (c) el chófer Alfredo Chévere Martínez guiaba el vehículo en el momento del accidente a velocidad moderada, por su derecha, tocó claxon y tomó todas las medidas y razonables precauciones para evitar accidentes.

por donde caminaba el demandante se desvió hacia la derecha por el mismo sitio en que el demandante iba caminando, arrollándolo por la espalda y haciéndolo caer a tierra al recibir el impacto.

"5. En el momento del accidente no transitaban otros vehículos por la sección de la Avenida Quisqueya en que aquél ocurrió; el automóvil de dicha codemandada era el único que transitaba y tenía bastante espacio para continuar su marcha sin ninguna interrupción, sin que surgiera motivo alguno que lo obligara a desviarse hacia la derecha e invadir el sitio de dicha vía pública por donde el demandante caminaba a pie.

"6. Como consecuencia de dicho accidente el demandante quedó sin conocimiento y fué llevado al Hospital Municipal de Santurce por el codemandado Chévere Martínez y su acompañante Pedro Meléndez, donde fué atendido y tratado de contusiones y fracturas en diversas partes del cuerpo, siendo trasladado a su hogar el mismo día del accidente luego de haber sido atendido por el personal del hospital.

"7. Como consecuencia de dicho accidente el demandante sufrió contusiones en la espalda y en el brazo derecho, erosiones en el tobillo izquierdo y fractura en el segundo, tercero, cuarto y quinto metatarso y en la falange proximal del pie izquierdo, así como algunas lesiones de menor importancia en otras partes del cuerpo. Tuvo enyesado el pie izquierdo durante cinco semanas. Desde su propio hogar tuvo que ir al hospital por espacio de dos meses a recibir tratamiento, siendo finalmente dado de alta como a los dos meses y medio de ocurrido el accidente. Padeció de grandes dolores físicos y sufrimientos morales, y aunque sanó de las contusiones en la espalda y en el brazo derecho y de las erosiones en el tobillo, aún siente dolor cuando pisa con el pie izquierdo.

"8. Existe una incapacidad parcial permanente del pie izquierdo del demandante como consecuencia del accidente, dando lugar esta incapacidad a que el demandante tenga cierta debilidad funcional al afirmar dicho pie.

"9. El accidente se debió única y exclusivamente a la culpa y negligencia del agente de la codemandada Caribbean Dairy, Inc. que conducía y operaba el automóvil de ésta cuando el accidente ocurrió."

No conformes los demandados con la sentencia dictada en su contra apelaron para ante este Tribunal y en su alegato imputan a la corte sentenciadora; la comisión de los siguientes errores:

"1. El tribunal inferior cometió error al dictar sentencia contra la codemandada Commercial Insurance Company y condenar a ésta a pagar compensación.

"2. El tribunal inferior cometió error al dictar sentencia contra la Caribbean Dairy, Inc. y condenar a ésta a pagar compensación.

"3. El tribunal inferior cometió error al dictar sentencia, contraria a la prueba, en contra de los tres demandados.

"4. El tribunal inferior cometió error al estimar excesivamente en $1,500 los sufrimientos físicos y morales del demandante, y en $30 los gastos de medicinas y viajes del demandante."

■ La única alegación en la demanda respecto a la codemandada Commercial Insurance Company, es al efecto de que ésta es una compañía aseguradora representada en Puerto Rico por sus agentes Insular Underwriters Corporation (véase escolio 1, supra); pero no se alega la existencia de algún nexo jurídico entre dicha codemandada y el dueño del vehículo que causó el accidente.[3] Esto de por sí sólo no sería fatal si de la prueba surgiera tal nexo ya que en ese caso la demanda podría considerarse enmendada para conformarla a la prueba. *Portela* v. *Saldaña*, 39 D.P.R. 542; *D'Azizi* v. *Alcaraz*, 40 D.P.R. 915; *Franqui* v. *Fuerte Hnos.*, 41 D.P.R. 224; *Sucn. Franceschi* v. *González*, 46 D.P.R. 42; *Almodóvar* v. *Acosta*, 43 D.P.R. 200; *Díaz* v. *García*, 47 D.P.R. 474; *Longchamps* v. *Franceschi*, 56 D.P.R. 691; *Font* v. *Viking Construction Corp.*, 58 D.P.R. 689.

Ello nos ha llevado a examinar toda la prueba ofrecida en el caso. La del demandante consistió en su propio testimonio, y en el de los testigos Alvaro Osorio, Dr. Iván H. García y Dr. Raúl A. Armstrong. Como prueba documental pre-

---

[3] Las conclusiones de hecho del tribunal a quo guardan silencio sobre este extremo.

sentó el demandante una certificación expedida por el Jefe de la División de Automóviles del Departamento de Obras Públicas, acreditativa de que el vehículo de motor licencia y tablillas H 80-572, marca Ford V8, modelo Truck F-7, 1948, figuraba registrado a nombre de la Caribbean Dairy, Inc. para el 4 de agosto de 1951. Esta prueba en conjunto no hace referencia ni remotamente a la codemandada Commercial Insurance Company. El demandante y el testigo Octavio Osorio se limitan a describir el accidente, el que según Osorio fué causado por un vehículo "que era una guagua, en forma de *truck*, con una caja grande—que vendía leche." "Era un Ford en buenas condiciones." Los otros dos testigos del demandante, los doctores García Ramírez y Armstrong declararon sobre las lesiones que presentaba el demandante y la atención que le prestaron.

Sin embargo, el apelado arguye que por la declaración del Dr. Francisco Antonio Ferraiouli, testigo de los demandados, quedó probada la condición de aseguradora de la codemandada Commercial Insurance Company. No tiene razón. Este testigo lo único que declaró en la repregunta fué que él no recordaba si examinó al demandante por orden de la corte o por orden de la compañía y que le parecía que su trabajo lo pagó la compañía. Del récord no se desprende cuál era esa "compañía". Tampoco hay en el récord ninguna otra prueba, ni siquiera indiciaria, que tienda a establecer el hecho de que la Commercial Insurance Company era la aseguradora del vehículo que arrolló al demandante. A falta de esa prueba tenemos que concluir que el primer error fué cometido. Por tanto, la sentencia apelada debe ser revocada en cuanto a la codemandada Commercial Insurance Company.

Por el segundo error se sostiene que no hay base en las alegaciones ni en la prueba para dictar sentencia contra la Caribbean Dairy, Inc. condenándola a pagar compensación.

Arguyen los apelantes que en la demanda no se alegó que Alfredo Chévere Martínez fuera empleado de la Caribbean

Dairy, Inc., en el curso de su empleo, y que la prueba tampoco suple esa omisión; que la prueba no identifica el vehículo de dicha codemandada como el vehículo envuelto en el accidente, ni tampoco demuestra que la Caribbean Dairy, Inc. fuera una empresa que utilizaba ese vehículo en su negocio.

Discrepamos. El testigo Alvaro Osorio declaró que el vehículo que arrolló al demandante "era una guagua, en forma de *truck*, con una caja grande—que vendía leche." Declaró además que ese vehículo era marca Ford. Esa descripción coincide sustancialmente con la del vehículo propiedad de la codemandada Caribbean Dairy, Inc., a que se refiere la certificación librada por el Jefe de la División de Automóviles, a saber: "vehículo de motor licencia y tablillas H 80-572, marca Ford V-8, modelo Truck F-7, 1948." Cabe el argumento de que esta prueba es insuficiente para demostrar que fué el vehículo de la codemandada el que arrolló al demandante; pero es que en el récord hay algo más, suficiente para producir una convicción moral de que eso es lo cierto. Veamos. El policía Manuel Ríos Rodríguez, testigo de los demandados-apelantes, declaró en la repregunta, lo siguiente:

"P ¿Y a dónde fué usted más, cuando fué a hacer la investigación?

"R Pues yo me encontré con el chófer que guiaba el vehículo. Allí hablé con el señor herido y con el chófer; y entonces le pregunté al chófer que si había testigos y me dijo que el único testigo que había era un peón que iba en el *truck* con él. Entonces de allí salimos a la Dairy.

"P Dígame, señor ¿a qué hora llegaron a la Dairy? ¿Usted salió con el chófer de la Dairy, y con el ayudante?

"R Yo salí en la *patrol* que yo manejaba.

"P ¿Y el chófer en qué iba?

"R No recuerdo si él iba en su *truck* o en la *patrol* conmigo.

"P ¿A qué hora estuvieron en la Dairy ustedes?

"R No recuerdo la hora.

"P ¿O sea, la empresa dueña del vehículo? ¿No recuerda?

"R No recuerdo.

"P ¿Se echó usted todo el día ahí, señor Ríos?

"R No, señor. La mañana.

"P ¿Toda la mañana?

"R No toda, tampoco.

"P ¿Usted no recuerda a qué hora llegó a la Dairy?

"R No, señor.

"P ¿Y qué hizo usted en la Dairy?

"R Allí ví al señor testigo y hablé con él.

"P ¿No habló con el dueño de la Dairy allí también?

"R Hablé con un señor allí, pero me parece que no era el dueño de la Dairy."

Pedro Meléndez, otro testigo de los demandados, después de declarar que el día del accidente iba junto al chófer del truck que arrolló al demandante, manifiesta en el contrainterrogatorio, lo siguiente:

"P ¿Dónde usted trabaja?

"R En la Caribbean Dairy.

"P ¿Trabaja todavía allí? Es mi pregunta.

"R No, señor, no trabajo allí ahora.

"P ¿Dónde trabaja usted ahora?

"R En un *truck* de Caguas, del señor Juan Rivera.

"P ¿Como chófer?

"R No. Como ayudante.

"P ¿Desde cuándo no trabaja usted en la Caribbean, señor?

"R. Va a haber casi un año. Yo me fuí en las Navidades estas que pasaron ahora.

"P ¿Usted dejó de trabajar desde el mismo momento en que dejó de trabajar Chévere?

"R No. Él se fué antes de mí.

"P ¿Y usted hace un año que no trabaja en la Caribbean, dice?

"R Casi un año.

"P ¿Y cómo llegó usted hasta aquí hoy?

"R Llegué porque el señor Bolívar me solicitó.

"P ¿Lo mandó a buscar a Caguas?

"R Exactamente. Me mandó a buscar a Caguas.

"P ¿Cuándo?

"R El lunes. Y yo comparecí a donde él el martes, porque el lunes no pude venir.

"P. ¿Usted ha visto a Chévere por ahí, el conductor del vehículo ese?

"R En ningún momento. Desde que dejó de trabajar no lo he visto. No sé cuál es el paradero de él."

De toda esta prueba se infiere lógicamente (1) que para la fecha del accidente el chófer Chévere Martínez era empleado de la codemandada Caribbean Dairy, Inc., (2) que dicho empleado conducía ese día [el del accidente] un vehículo que responde en su descripción al vehículo propiedad de dicha codemandada, en el cual viajaba además, otro empleado suyo, y que a falta de prueba en contrario ello establece la identidad del vehículo de dicha codemandada como el causante del accidente, y (3) que ese vehículo se utilizaba para vender leche.

Esto último coloca al vehículo de la codemandada formando parte de una empresa. En su consecuencia, se presume que el chófer Chévere Martínez actuaba en el curso del desempeño de sus atribuciones como empleado de la Caribbean Dairy, Inc. *Pereira* v. *Commercial Transport Co.*, 70 D.P.R. 641, y casos en él citados. Concluímos que no se cometió el segundo error señalado.

■■ El tercer señalamiento de error carece de mérito. La prueba del demandante, creída por el tribunal sentenciador, demostró que el día de los hechos, entre 6:00 y 6:30 de la mañana, dicho demandante se dirigía a su trabajo caminando a pie y por su derecha por la Avenida Quisqueya, frente al Hipódromo Las Monjas en Hato Rey; que en la misma dirección discurría a gran velocidad el vehículo conducido por Chévere Martínez, sin tocar claxon, ni tomar las debidas precauciones, arrollando al demandante y lanzándole a una cuneta. La prueba de los propios demandados establece la culpa y negligencia del chófer Chévere Martínez. Ésta fué al efecto de que el demandante caminaba por su derecha; que Chévere Martínez conducía el vehículo a velocidad moderada, de 20 a 25 millas por hora y que tocó claxon al acercarse al demandante pero éste lo único que hizo fué "ladear" el cuerpo por lo que el camión chocó con él. Aceptando como cierta esa versión, el deber del chófer Chévere Martínez, era el de detener

el vehículo o desviarse hacia su izquierda para evitar el accidente. La ley no le autoriza a pasarle por encima al demandante si éste no evadía al vehículo.

Bajo tales circunstancias es pueril argumentar que el accidente no se debió a la culpa y negligencia del conductor del vehículo.

■ El cuarto error carece igualmente de mérito. La prueba que hay en el récord justifica plenamente la razonabilidad de la cuantía concedida en concepto de daños.

*Por los motivos expuestos la sentencia apelada será revocada en cuanto a la demandada Commercial Insurance Company, y confirmada en cuanto a los otros codemandados.*